IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOVON SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 14 C 6547 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| MEGAN PINAS, SALEH OBAISI, | ) | |
| MARCUS HARDY, STANLEY | ) | |
| JENKINS, JASON BERRY, and | ) | |
| KAREN FRYER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jovon Scott ("Plaintiff") brings this civil rights action under 42 U.S.C. § 1983. At all times relevant to this action, he was incarcerated at Stateville Correctional Center ("Stateville") in the custody of the Illinois Department of Corrections ("IDOC"), and received medical care from Wexford Health Sources, Inc. ("Wexford"). He claims that, during this period, Wexford employees Megan Pinas and Dr. Saleh Obaisi ("the Wexford Defendants"), as well as IDOC employees Marcus Hardy, Stanley Jenkins, Jason Berry, and Karen Fryer ("the IDOC Defendants") (collectively, "Defendants"),[1] were deliberately indifferent to his serious medical need in violation of the Eighth Amendment. The Wexford Defendants and the IDOC Defendants have moved separately for summary judgment. For the reasons that follow, the Wexford Defendants' motion [97] is granted, and the IDOC Defendants' motion [101] is granted in part and denied in part.

---

[1] The complaint merely names "Megan" without providing a surname. *See* Compl. at 2, ECF No. 6. Megan Pinas was served and filed an answer on February 24, 2015, *see* ECF Nos. 31, 38, and joins in the Wexford Defendants' motion for summary judgment. Similarly, the complaint names "Frye." *See* Compl. at 2. Karen Fryer was served and filed an answer on July 21, 2015, *see* ECF Nos. 7, 55, and joins in the IDOC Defendants' motion for summary judgment.

1

## Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule ("LR") 56.1 establishes a procedure for presenting facts on summary judgment. Under LR 56.1(a)(3), the movant must submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LR 56.1(a)(3). In turn, the opposing party must file "a concise response to the movant's statement." LR 56.1(b)(3). This response must consist of "numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed." LR 56.1(b)(3)(A). In addition, the opponent must "respon[d] to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). Finally, the opponent must submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." LR 56.1(b)(3)(C).

Here, Plaintiff, who is represented by counsel, failed to respond to Defendants' LR 56.1(a)(3) statements of facts with a response as dictated by LR 56.1(b)(3). In addition, Plaintiff did not submit a statement of additional facts under LR 56.1(b)(3)(C). Rather, Plaintiff filed two response briefs which contradict certain factual assertions in Defendants' statements of facts and assert additional facts. Plaintiff has therefore failed to comply with LR 56.1, and the Court is entitled to admit Defendants' statements of facts and disregard any additional facts Plaintiff has asserted. *See, e.g.*, *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015) (affirming a district court's decision to admit defendants' uncontested statement of facts and to "disregard[ ] evidentiary documents because a required statement of facts was not filed"); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005). As such, the Court will accept Defendants'

"uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). That said, insofar as the materials Defendants have submitted do not comply with LR 56.1 or do not otherwise indicate that summary judgment is warranted, the Court does not deem Plaintiff's failure to file a rule-compliant response dispositive. *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 706 (7th Cir. 2013) ("Where the moving party has undermined its own [LR] 56.1 assertion through the presentation of contradictory assertions and evidence, a nonmovant's 'admission' of the movant's assertion is not decisive.").

**Background**

On December 21, 2012, while incarcerated at Stateville, Plaintiff awoke due to an irritation in his left ear. Wexford Defs.' LR 56.1(a)(3) Stmt. ¶ 8, ECF No. 98; IDOC Defs.' LR 56.1(a)(3) Stmt. ¶ 7, ECF No. 103. He believes the irritation was caused by a cockroach that had crawled into his ear. Wexford Defs.' LR 56.1(a)(3) Stmt. ¶ 8; IDOC Defs.' LR 56.1(a)(3) Stmt. ¶¶ 2, 7. As a result, Plaintiff claims that he suffered pain in his ear and hearing loss. IDOC Defs.' LR 56.1(a)(3) Stmt. ¶ 2; *id.*, Ex. 2 ("Pl.'s Dep."), at 18:21–19:19.

According to Plaintiff, he informed various prison officials and medical personnel about his condition. *See id.* ¶¶ 9–18.[2] First, immediately after the incident on December 21, he

---

[2] The IDOC Defendants cite to various portions of Plaintiff's deposition for the proposition that he does not recall which officials and personnel he spoke with about his condition. They conclude that "[o]n December 21, 2012, from the time the cockroach entered Plaintiff's left ear, through December 26, 2012, Plaintiff does not recall talking with Defendants Jenkins, Berry, or Fryer about this issue." *Id.* ¶ 9. But in the portion of his deposition that they cite in support of this assertion, Plaintiff testified that he "spoke to the officers who [were] assigned to [his] gallery and [ ] spoke to the lieutenant that was assigned to the cell house," but did not know their names at the time. Pl.'s Dep. at 35:8–20. At the time of the incident, Plaintiff was new to Stateville and only later learned their names. *Id.* at 36:6–15. This testimony, therefore, does not establish that Plaintiff does not recall speaking with the officers. Rather, in the very next lines of his deposition, he testified that he recalls speaking with them. *Id.* at 35:21–36:4. Accordingly, because the IDOC Defendants' assertion is not supported by the record, the Court disregards it. In order to clarify what factual disputes remain for trial, the Court references both the IDOC Defendants' LR 56.1 statement and Plaintiff's deposition in this paragraph.

3

informed an officer of what had occurred and requested medical attention. *See id.* ¶ 9; Pl.'s Dep. at 10:22–24. The officer advised him to "put in for [a] nurse sick call." Pl.'s Dep. at 11:2.[3] The next day, December 22, he continued to complain to prison officials about his ear condition. *Id.* ¶¶ 10–11. He "notified the medical technician who was passing meds out" as well as "pretty much [ ] everybody from the lieutenant to the gallery officer." Pl.'s Dep. at 20:15–18. He was again instructed to submit a written request for treatment. *Id.* at 20:9–14. On December 23, he repeated his request for treatment to medical personnel passing out medications, but he did not receive medical attention. IDOC Defs.' LR 56.1(a)(3) Stmt. ¶ 13. His condition purportedly worsened. On December 26, Plaintiff experienced bleeding in his ear and claims that he removed fragments of the cockroach from his ear with the help of his cellmate. *Id.* ¶¶ 14–15. Plaintiff attests that he showed the fragments to a lieutenant, who informed Plaintiff that he would notify the health care unit, but Plaintiff never received medical attention. *Id.* ¶¶ 16–17.

Although Plaintiff cannot remember specifically which officials he spoke to on which dates during the period of December 21 through December 26, *id.* ¶¶ 9–11, 13, 16–17, Stanley Jenkins and Jason Berry, who served as lieutenants while Plaintiff was incarcerated at Stateville, and Karen Fryer, who served as a Stateville medical technician, were among the individuals to whom he complained, Pl.'s Dep. at 35:21–36:4; 37:4–10. In addition to these complaints, Plaintiff alleges that he filed various grievances during this time period and until he received treatment, including an emergency grievance to Marcus Hardy as warden on December 21. IDOC Defs.' LR 56.1(a)(3) Stmt. ¶ 8.

Plaintiff also complained to a nurse who he believes was Megan Pinas. Wexford Defs.' LR 56.1(a)(3) Stmt. ¶¶ 12–13. He does not know whether the nurse was in fact Megan Pinas,

---

[3] According to the IDOC Defendants, inmates are responsible for filling out written requests for treatment, but correctional officers also communicate information about inmate conditions and complaints to the health care unit. IDOC Defs.' LR 56.1(a)(3) Stmt. ¶¶ 39, 43, 52, 55.

but other inmates told him that Megan was the name of the nurse with whom he spoke. *Id.* On the occasion he spoke with her, the nurse was passing out medications. *Id.* ¶ 13; *see* Pl.'s Dep. at 97:10–14, 98:16–99:8. As she passed by his cell, Plaintiff claims that he yelled out to her, "I'm trying to be seen. I have a medical question." Wexford Defs.' LR 56.1(a)(3) Stmt. ¶ 13. The nurse instructed him to submit a written request for treatment. *Id.*

It was not until January 9, 2013, that Plaintiff received medical attention for his ear. *See id.* ¶ 15. On that day, Dr. Saleh Obaisi examined Plaintiff's ear, using an otoscope to "get good light with magnification," and found no damage to the ear or eardrum. *Id.* ¶ 17. Based on Plaintiff's report that he performed regular self-cleaning of his ears, Dr. Obaisi determined that Plaintiff's report of pain and swelling could be the result of an infection, or alternatively, inflammation without an infection. *Id.* ¶¶ 18–19. There is no evidence properly before the Court that Plaintiff complained of hearing loss,[4] and Dr. Obaisi testified that he did not. *Id.*, Ex. B ("Obaisi Dep."), at 19:10–14. Based on his examination, Dr. Obaisi prescribed Plaintiff an antibiotic. *Id.* ¶ 19. The antibiotic was effective. When Dr. Obaisi saw Plaintiff again on February 2, 2013, his pain and swelling had decreased. *Id.* ¶ 21. Again, there is no evidence properly before the Court that Plaintiff complained of hearing loss at this subsequent appointment.

Following these visits, Plaintiff saw health care professionals at Stateville approximately forty more times before he was transferred to Henry Hill Correctional Center ("Henry Hill") on October 13, 2014. *Id.* ¶ 23. He did not seek treatment for his ear at any of these appointments. *Id.* Upon being transferred to Henry Hill, he did not report any issues with his ear until June 25, 2015. *Id.* ¶ 27. When he did eventually complain of ear pain, medical officials at Henry Hill

---

[4] Plaintiff claims that he did complain to Dr. Obaisi of hearing loss, but this additional fact was not properly presented under LR 56.1, as explained above.

prescribed antibiotics and instructed him to cease inserting objects into his ear. *Id.* ¶¶ 27–28. Plaintiff maintains that he suffers from hearing loss and pain in his left ear to this day. *See id.* ¶ 29.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

Plaintiff has filed suit under 42 U.S.C. § 1983, claiming that Defendants violated his Eighth Amendment rights by depriving him of medical treatment for his ear condition. As with all § 1983 claims, Plaintiff must demonstrate, as a preliminary matter, that Defendants were personally involved in the events giving rise to his claim. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). This requires "a causal connection or affirmative link between the action complained about and the official sued." *Arnett v. Webster*, 658 F.3d 742, 759 (7th Cir. 2011). The Eighth

Amendment, in turn, proscribes "deliberate indifference to serious medical needs of prisoners . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (citation and footnotes omitted). To prove a claim of deliberate indifference to serious medical needs, a plaintiff must demonstrate (1) an objectively serious medical need and (2) subjective, deliberate indifference on the part of the defendant. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).[5]

Regarding the second prong, "[a]lthough negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care." *Roe*, 631 F.3d at 857. Rather, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 837), *cert. denied*, 137 S. Ct. 1578 (2017).

Each Defendant contends that he or she was not personally involved in the events on which Plaintiff bases his suit or was not deliberately indifferent to his serious medical need. The Court will address these arguments as to each Defendant in turn.

I. **Wexford Defendants**

    A. **Megan Pinas**

Megan Pinas ("Pinas") contends that there is no evidence of her involvement in the events giving rise to Plaintiff's claims and that, in any case, the involvement Plaintiff alleges on her part does not amount to deliberate indifference. Turning first to the issue of Pinas's personal involvement, Pinas concedes that Plaintiff complained to a nurse he believes was Pinas about his

---

[5]     Defendants do not dispute that Plaintiff's ear condition presented an objectively serious medical need.

7

ear condition. Wexford Defs.' LR 56.1(a)(3) Stmt. ¶ 13. Pinas denies, however, that she was in fact the nurse to whom Plaintiff complained, and she notes that Plaintiff's belief that she was the nurse to whom he complained is based solely on what other, unidentified inmates told him. *Id.* ¶ 12; *see* Pl.'s Dep. at 97:15–23. This hearsay evidence cannot establish a genuine issue of fact as to whether Plaintiff complained to a nurse who was in fact Pinas. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1265 (7th Cir. 1993) (noting that, on summary judgment, courts "do not consider hearsay statements that are otherwise inadmissible at trial, and this limitation applies to deposition testimony based on inadmissible hearsay"); *W. Am. Ins. Co. v. Trent Roofing & Constr.*, 539 F. Supp. 2d 1052, 1055 (N.D. Ill. 2008) (declining to consider deposition testimony on summary judgment where the sole basis for the testimony was hearsay). Without evidence that Plaintiff complained to Pinas, a reasonable jury could not conclude that she was personally involved in depriving Plaintiff of his Eighth Amendment rights.

And, even if Plaintiff could properly identify Pinas as the nurse to whom he complained, he cannot show that she was deliberately indifferent to his medical need. Plaintiff testified at his deposition that he complained to the nurse he believes was Pinas during a "brief moment" while she was walking past his cell and distributing medication to other inmates. Wexford Defs.' LR 56.1(a)(3) Stmt. ¶ 13; *see* Pl.'s Dep. at 97:10–14, 98:16–99:8.[6] He told her that he was "trying to be seen" and that he had "a medical question." Wexford Defs.' LR 56.1(a)(3) Stmt. ¶ 13. The

---

[6] Plaintiff's deposition suggests that he spoke to the nurse in question on more than one occasion. Pl.'s Dep. at 98:10–14. But when pressed for specific details of what he told the nurse, he could remember only the "brief moment" discussed in this paragraph and what he told her during this moment. *Id.* at 97:10–14, 98:16–99:8. In addition, Plaintiff's response brief seems to assume that Pinas had a duty to follow up with him and offer him medical treatment on future dates following this "brief moment." Pl.'s Resp. Wexford Defs. at 7–13, ECF No. 105. But there is nothing in the record that would permit a reasonable jury to determine whether it was the nurse's responsibility to do so. And, as detailed below, there is nothing that Plaintiff told the nurse that would permit a reasonable jury to find that failing to check up on him or offer him further treatment amounts to deliberate indifference.

nurse responded by instructing Plaintiff to file a written request for treatment. *Id.* There is no indication that Plaintiff had visible symptoms or described his medical question to the nurse. Based on these facts, there is no evidence from which a reasonable jury could conclude that the nurse had actual knowledge of his ear condition and deliberately disregarded Plaintiff's perceived need for immediate treatment. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (holding that a nurse could not be found deliberately indifferent to a risk to plaintiff's health where plaintiff "displayed no [ ] strange behavior or any obvious signs that he was" at risk); *Neisler v. Larson*, No. 14-CV-655-PP, 2017 WL 913609, at *14 (E.D. Wis. Mar. 7, 2017) (granting summary judgment for a nurse where there was no evidence that she knew of plaintiff's condition or desired treatment); *Dixon v. Grinnell*, No. 91 C 4109, 1994 WL 53820, at *4 (N.D. Ill. Feb. 18, 1994) (same). For these reasons, the Court grants summary judgment in favor of Pinas.

### B. Dr. Saleh Obaisi

Dr. Saleh Obaisi ("Dr. Obaisi") concedes that he was aware of Plaintiff's ear condition given that he treated him for it on two different occasions,[7] but he maintains that his treatment cannot amount to deliberate indifference. A medical professional like Dr. Obaisi is "entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)

---

[7] Plaintiff's response brief discusses a third occasion on April 2, 2013, but this treatment was not described in his complaint and occurred outside the period of time on which his complaint is based. Plaintiff never amended his complaint to include allegations related to this treatment. Thus, the Court declines to consider it. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" (quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002))). In any case, Plaintiff has not presented evidence of this third occasion that is properly before the Court. Additionally, Plaintiff appears to believe that Dr. Obaisi was deliberately indifferent for failing to offer to provide him treatment prior to January 9, 2013. Pl.'s Resp. Wexford Defs. at 4–9. But Plaintiff fails to identify any evidence that Dr. Obaisi knew of Plaintiff's ear condition prior to January 9.

9

(quoting *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 988 (7th Cir. 1998)). "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if 'the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Id.* at 895 (quoting *Collignon*, 163 F.3d at 988). Here, Dr. Obaisi saw Plaintiff, performed a physical exam of his ear, and found no damage. Wexford Defs.' LR. 56.1(a)(3) Stmt. ¶ 17. Nevertheless, believing that Plaintiff could be suffering from an infection or inflammation, Dr. Obaisi prescribed an antibiotic. *Id.* ¶¶ 18–19. There is no evidence properly before the Court that Plaintiff complained of hearing loss, and Dr. Obaisi's testimony indicates that he did not. Obaisi Dep. at 19:10–14. Dr. Obaisi's treatment was effective, and Plaintiff's pain and swelling decreased. Wexford Defs.' LR 56.1(a)(3) Stmt. ¶ 21. Plaintiff did not complain to medical personnel at Stateville about his ear for the remainder of his time at the facility, which included over forty medical appointments. *Id.* ¶ 23. Based on these facts, no reasonable jury could conclude that Dr. Obaisi was deliberately indifferent to Plaintiff's medical need. *McGee v. Adams*, 721 F.3d 474, 482 (7th Cir. 2013) ("[M]eaningful and ongoing assessment of a patient's condition is the antithesis of deliberate indifference." (internal quotation marks omitted)).

By way of his response brief—which, as explained above, is an improper mechanism for introducing additional facts on summary judgment—Plaintiff claims that he told Dr. Obaisi that he was experiencing hearing loss, and requested a hearing test. Pl.'s Resp. Wexford Defs. at 10–11. According to Plaintiff, Dr. Obaisi responded by instructing Plaintiff to "give it some time" and assured him that his hearing would "resume back to normal." *Id.*; *see* Pl.'s Dep. at 40:14–22, 42:16–22. Based on these additional facts, Plaintiff asserts that Dr. Obaisi acted with

deliberate indifference to his hearing loss by failing to conduct a hearing test. Even if the Court were to consider and credit Plaintiff's assertions, which are not properly before it, there is no evidence from which a reasonable jury could conclude that Dr. Obaisi's decision to not conduct a hearing test evinced deliberate indifference. There is nothing in the record from which a reasonable jury could conclude that Dr. Obaisi's decision to wait to see whether Plaintiff's hearing would return substantially departed from accepted medical judgment. This is especially so given that, as Plaintiff concedes, the pain and swelling in his ear had decreased by the second time Dr. Obaisi saw him.

As such, even under Plaintiff's version of events, "[w]hat we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). To that end, "the question whether an [examination] or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle*, 429 U.S. at 107; *see also Davis v. Lemke*, No. 13 C 3971, 2016 WL 5404601, at *7 (N.D. Ill. Sept. 28, 2016) (concluding that a medical professional's decision to defer referring a prisoner for an appointment with an ear, nose, and throat specialist in order to wait for other treatment to run its course was entitled to deference). For these reasons, no reasonable jury could conclude that Dr. Obaisi was deliberately indifferent to Plaintiff's medical needs, and the Court grants summary judgment in his favor.[8]

---

[8] Pinas and Dr. Obaisi raise the additional arguments that Plaintiff has not provided medical evidence to establish a detrimental effect or injury related to or caused by their treatment, and that Plaintiff failed to exhaust administrative remedies. Wexford Defs.' Mem. at 8–9, ECF No. 100. But because the Court concludes that they are entitled to summary judgment on the foregoing grounds, it need not address these issues.

## II. IDOC Defendants

### A. Marcus Hardy

Marcus Hardy ("Hardy") contends that, as warden, he never received or reviewed grievances from Plaintiff relating to his ear condition and thus was not personally involved in depriving Plaintiff of his Eighth Amendment rights. In general, if a plaintiff "alleges no personal involvement by the warden outside of the grievance process," the warden cannot be liable for deliberate indifference. *Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012); *see also Barrett v. Marberry*, 402 F. App'x 143, 146 (7th Cir. 2010) (affirming summary judgment for a warden where the plaintiff "ha[d] not set forth evidence showing that the [warden was] personally involved in his various treatments"). Still, ignoring or consciously disregarding an inmate's grievance can constitute deliberate indifference. *Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010).

Here, however, there is no evidence in the record that Hardy was aware of Plaintiff's grievances. Hardy did not review Plaintiff's grievances and was not aware of his ear condition. IDOC's LR 56.1(a)(3) Stmt. ¶¶ 31–32, 34–36. And, as of January 1, 2013, Hardy was no longer warden at Stateville, and thus was not responsible for reviewing grievances filed after that day. *Id.* ¶ 33. Plaintiff's response brief is bereft of any facts indicating Hardy's involvement and twice acknowledges that none of the other defendants informed Hardy of his condition. Pl.'s Resp. IDOC Defs. at 8, 10, ECF No. 104.[9] Thus, Plaintiff has not raised a triable issue of fact as to whether Hardy, who was not involved in Plaintiff's treatment and had no knowledge of his condition, was deliberately indifferent to Plaintiff's medical need. *Stallings v. Hardy*, No. 11 C

---

[9] Plaintiff alleged in his complaint that he filed an emergency grievance with Hardy on December 21, 2012. Compl. at 5, ECF No. 6. But Plaintiff cannot rest on his complaint at this stage. *Harvey v. Town of Merrillville*, 649 F.3d 526, 532 (7th Cir. 2011). In addition, his response brief does not mention the grievance, and in any case, there is no indication from the record that Hardy read or reviewed the grievance.

8107, 2013 WL 5781805, at *9 (N.D. Ill. Oct. 25, 2013) (observing that "knowledge on Warden Hardy's behalf of Plaintiff's medical condition and diet cannot be based on grievances that Warden Hardy had no knowledge of and did not review"). Accordingly, the Court grants summary judgment in Hardy's favor.

### B. Jason Berry, Stanley Jenkins, and Karen Fryer

Jason Berry ("Berry"), Stanley Jenkins ("Jenkins"), and Karen Fryer ("Fryer") assert that there is no evidence tying them to Plaintiff's allegations in this case and that they have no memory of communicating with Plaintiff about his ear condition. They argue, therefore, that they were not personally involved in the events giving rise to his claim. They further contend that, even if they had communicated with Plaintiff about his ear condition, they would have followed proper procedure by either instructing him to file a written request for treatment or reporting his verbal request to the health care unit. On this basis, they maintain that they were not deliberately indifferent to his medical need.

In support of their position denying personal involvement, Berry, Jenkins, and Fryer assert that Plaintiff does not know the identities of the officers and medical personnel to whom he complained about his ear condition from December 21 through December 26. IDOC Defs.' LR 56.1(a)(3) Stmt. ¶¶ 9–13, 18. They source this assertion in various portions of Plaintiff's deposition. At his deposition, however, Plaintiff testified that he could identify Berry, Jenkins, and Fryer as individuals to whom he complained about his ear condition on the dates in question, but merely could not recall at what specific dates and times during this period, or in what order, he spoke to them. Pl.'s Dep. at 34:16–37:10. For example:

> Q: You don't recall talking to Lieutenant Berry, Lieutenant Jenkins[,] or Ms. Frye[r] as you sit here today on December 21, 2012, up to and including December 26, 2012. Is that fair?

13

> A: All I'm saying is I spoke to them [by] that date, I can't say if them was the people I spoke with as I listed in chronological order.

*Id.* at 37:4–10. Thus, Plaintiff testified that he spoke to Berry, Jenkins, and Fryer, but simply cannot recall precisely when he spoke with them. Such testimony suffices to create a genuine issue of fact as to their personal involvement. *See Barbosa v. McCann*, No. 08 C 5012, 2011 WL 4062469, at *5 (N.D. Ill. Sept. 12, 2011) (holding that plaintiff's testimony that he complained to defendant officers "on several unspecified occasions" created a genuine dispute of fact as to whether the officers were aware of the conditions giving rise to his § 1983 claim).

In addition to this testimony, Plaintiff later elaborated on his interactions with each IDOC Defendant. He testified that, after notifying Berry of his condition between December 21 and December 23, he asked Berry for treatment again on December 31, and Berry advised him to be patient. Pl.'s Dep. at 38:1–39:6. He further testified that he complained to Jenkins about his ear condition and received no help, *id.* at 118:3–119:3, and gave "numerous medical slips" to Fryer pertaining to his left ear, *id.* at 121:8–12. Plaintiff's deposition testimony, therefore, raises a genuine issue of fact as to Berry, Jenkins, and Fryer's personal involvement.

For their part, Berry, Jenkins, and Fryer have no recollection of communicating with Plaintiff about his ear condition. IDOC Defs.' LR 56.1(a)(3) Stmt. ¶¶ 45, 54, 72–73. But the fact that they do not remember communicating with Plaintiff fails to establish that they did not, especially when Plaintiff has testified otherwise. *Cf. Rebolar ex rel. Rebolar v. City of Chi.*, 897 F. Supp. 2d 723, 734 (N.D. Ill. 2012) ("[A] statement that a witness does not remember is not enough to put that fact into dispute at summary judgment." (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002))). For these reasons, a reasonable jury could conclude that Berry, Jenkins, and Fryer were personally involved in denying Plaintiff treatment for his ear condition.

14

Furthermore, a reasonable jury could conclude that Berry, Jenkins, and Fryer were deliberately indifferent to Plaintiff's medical need. According to Plaintiff, over the course of more than a week, he informed Berry, Jenkins, and Fryer on multiple occasions that he was experiencing ear pain and needed medical attention. In response, they repeatedly told him to file medical requests, but they did nothing else to help him. They did not communicate his condition and need for treatment to the health care unit, as was within their job responsibilities. "If [Plaintiff] informed prison officials that he was in severe pain . . . and they did nothing about it because they did not care about his pain, that is the very definition of deliberate indifference." *Rowe v. Gibson*, 798 F.3d 622, 635 (7th Cir. 2015) (Rovner, J., concurring); *see also Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("[D]eliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim.").

As for Berry and Jenkins, non-medical prison officials are permitted to defer to the professional judgment of a prison's medical professionals. *Hayes v. Snyder*, 546 F.3d 516, 527–28 (7th Cir. 2008). But, insofar as they ignored Plaintiff's complaints and caused him to suffer prolonged, unnecessary pain, a reasonable jury could conclude that they were deliberately indifferent, *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (holding that where "three guards knew that [plaintiff] was in pain, but they did not secure medical treatment for him until, at the earliest, one-and-a-half days after they knew about the injury," there was a genuine issue of fact as to whether the guards were deliberately indifferent).

As for Fryer, if Plaintiff indeed informed her of his pain repeatedly and she did nothing but instruct him to fill out requests for treatment, this, too, could amount to deliberate indifference. *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010) (holding that where a nurse "refused to treat or even see [plaintiff] in spite of her serious medical condition, a jury could

easily find that her actions surpassed mere negligence and entered the realm of deliberate indifference"). A genuine issue of fact remains, therefore, as to whether Berry, Jenkins, and Fryer were deliberately indifferent to Plaintiff's medical need. Their requests for summary judgment are denied.

## Conclusion

For the foregoing reasons, the Wexford Defendants' motion for summary judgment [97] is granted, and the IDOC Defendants' motion for summary judgment [101] is granted in part and denied in part. Summary judgment is granted in favor of Megan Pinas, Dr. Saleh Obaisi, and Marcus Hardy, but denied with respect to Jason Berry, Stanley Jenkins, and Karen Fryer. A status hearing is set for 9/20/17 at 9:00 a.m. in order to discuss a schedule for a pretrial conference and trial.

**IT IS SO ORDERED.**              **ENTERED: 9/11/17**

                                                     **JOHN Z. LEE**
                                                     **United States District Judge**